1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  MICHAEL VINCENT CISNEROS,          )   Case No.: 1:11-cv-01297-LJO-BAM (PC)
                                       )
12                  Plaintiff,          )   FINDINGS AND RECOMMENDATIONS
                                       )   REGARDING DEFENDANT'S MOTION FOR
13          v.                          )   SUMMARY JUDGMENT
                                       )
14  DR. M. DHAM, et al.,                )
                                       )   (ECF No. 45)
15                  Defendants.         )
                                       )   THIRTY-DAY DEADLINE
16                                      )
                                       )
17  _____ )

18      **I.      Introduction**

19          Plaintiff Michael Vincent Cisneros ("Plaintiff") is a state prisoner proceeding pro se and in

20  forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on

21  Plaintiff's complaint, filed on August 5, 2011, against Defendant Neubarth for deliberate indifference

22  to Plaintiff's medical needs in violation of the Eighth Amendment.

23          On August 21, 2014, Defendant Neubarth filed a motion for summary judgment on the grounds

24  that he did not violate Plaintiff's Eighth Amendment rights and that he is entitled to qualified

25  immunity.[1]  (ECF No. 45.)  On September 22, 2014, Plaintiff filed his opposition.  (ECF No. 49.)

26

27  _____
    [1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary
28  judgment.  (ECF No. 45-4); See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th
    Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

1

Following an extension of time, Defendant filed a reply on October 21, 2014, which included

objections to Plaintiff's evidence.  (ECF No. 54.)  On October 29, 2014, Plaintiff filed a response to

Defendant's objections.[2]  (ECF No. 55.)  The motion is deemed submitted.  Local Rule 230(l).

## II.     Defendant's Motion for Summary Judgment

### A.  Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery

and upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the

filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The

"party seeking summary judgment always bears the initial responsibility of informing the district court

of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (internal

quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party

to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this

factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

---

[2] On October 14, 2014, the Court granted Defendant an extension of time to file a reply in support of the motion for summary judgment.  (ECF No. 53.)  The order was served on Plaintiff by mail on the same date.  On October 21, 2014, Defendant filed his reply, which included objections to Plaintiff's evidence.  (ECF No. 54.)  Plaintiff filed his response to Defendants' objections on October 29, 2014.  (ECF No. 55.)  On November 25, 2014, the United States Postal Service returned the Court's order granting Defendant an extension of time to file a reply sent to Plaintiff.  As it appears Plaintiff was served with Defendant's reply, the failure to receive the Court's order regarding an extension of time is harmless.  Nonetheless, the Clerk of the Court has re-served the order on Plaintiff.

support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11.

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B.  Defendant's Evidentiary Objections**

On October 21, 2014, Defendant filed objections to Exhibits 1, 2 and 3 submitted by Plaintiff in his opposition.  (ECF No. 54-2.)  Plaintiff filed his response to the objections on October 29, 2014. (ECF No. 54.)

<u>Exhibit 1</u>

Exhibit 1 is the sworn declaration of Plaintiff's mother, Diana Collier.  Defendant objects to this declaration as vague, ambiguous, conclusory, not relevant, lacking foundation, and containing impermissible hearsay in violation of Federal Rules of Evidence 402, 602, 802.  Defendant further objects that Diana Collier's declaration claiming that Neurontin use caused damage to Plaintiff's eyes is not admissible under Federal Rule of Evidence 702 because competent expert testimony is required in order to establish medical causation between a particular event and the damage claimed by the Plaintiff.

Plaintiff counters that he did not submit the declaration of Diana Collier as expert testimony. Rather, Plaintiff states that he submitted the declaration to demonstrate how he obtained the pharmacy-listed side effects of gabapentin and to demonstrate that he had to obtain the side effects himself because no doctor would check the side effects.

Despite Plaintiff's assertions, there is no indication in the declaration of Diana Collier that she provided Plaintiff with a copy of any pharmacy-listed side effects of gabapentin or that it was the only means to obtain the side effects.  (Pl's Ex. 1, ECF No. 49, p. 31.)  It appears instead that Ms. Collier is

3

1   providing testimony regarding the purported side effects of Neurontin, the diagnosis of Plaintiff

2   following an eye exam and Plaintiff's vision status prior to taking Neurontin.  (Id.)

3        Although Ms. Collier declares that she is a nurse, she has not been qualified as a medical

4   expert pursuant to Federal Rule of Evidence 702.  As such, Ms. Collier's non-expert testimony is

5   limited to statements "(a) rationally based on the witness's perception; (b) helpful to clearly

6   understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific,

7   technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

8   Therefore, she may not offer medical testimony regarding Plaintiff's vision status, diagnosis or

9   medication side effects.  She also may not provide testimony regarding causation.  "[G]enerally

10   plaintiff must prove causation by expert medical testimony except where there is an obvious causal

11   relationship-one where injuries are immediate and direct." Walker v. Contra Costa County, 2006 WL

12   3371438 at * 9 (N.D. Cal. 2006), quoting In re Baycol Products Litigation, 321 F.Supp.2d 1118, 1125

13   (D. Minn. 2004) (citation omitted) (internal quotation omitted).

14        Defendant's objections to Ms. Collier's declaration on the grounds that she is not a medical

15   expert pursuant to Federal Rule of Evidence 702 are SUSTAINED.

16        Exhibit 2

17        Exhibit 2 appears to be internet printouts of the warnings, precautions and side effects of

18   Gabapentin and Neurontin.  Exhibit 2 also includes information from the Food and Drug

19   Administration ("FDA"), a federal government agency.  Defendant does not object to the FDA

20   documents.  Accordingly, the Court's ruling is limited to the internet printouts regarding the side

21   effects of Neurontin and Gabapentin, Plaintiff's Exhibit 2, ECF No. 49, pp. 34-41.

22        Defendant objects that the internet documents lack foundation and authentication, and cannot

23   be substituted for expert testimony that is required in order to establish medical causation between a

24   particular event and the damage claimed by the Plaintiff.  Plaintiff counters that his mother, a

25   registered nurse, obtained the listed side effects of Gabapentin and sent them to him.

26        Defendant's objections that the documents printed from the internet comprising Exhibit 2 lack

27   foundation and authentication are SUSTAINED.  Plaintiff has failed to produce evidence that these

28   documents are what Plaintiff claims them to be and he cannot lay a foundation for records composed

by third parties because he lacks personal knowledge regarding their contents.  Fed. R. Evid. 602, 902.

Plaintiff does not submit the testimony of a witness with knowledge of the documents.  Fed. R. Evid.

901.  Further, Defendant's objection that Plaintiff cannot substitute these documents in place of expert

testimony regarding medical causation is SUSTAINED.  See Walker, 2006 WL 3371438 at *9;

Domingo v. T.K., 289 F.3d 600, 607 (9th Cir. 2001) (competent expert testimony is required to

establish medical causation between a particular event and any injury); Scott v. MTA Keller, 2010 WL

3635728, *6 (E.D. Cal. Sept. 14, 2010); Cf. Hutchinson v. United States, 838 F.2d 390, 393 (9th Cir.

1988).

Exhibit 3

Exhibit 3 is comprised of photos of Plaintiff's mother and father.  Defendant objects that these

documents are not relevant and they cannot be substituted for competent expert testimony to establish

medical causation.  Plaintiff responds that the pictures of his parents are meant to show that Plaintiff

does not "suffer from a genetic eye disorder."  (ECF No. 55, p. 1.)

The photos of Plaintiff's mother and father are not relevant to the claim of deliberate

indifference to serious medical needs.  Fed. R. Evid. 401.  Further, the photos cannot be used to

demonstrate that Plaintiff does not have a genetic eye disorder.  Plaintiff is not a qualified medical

expert able to testify regarding the presence or absence of genetic eye disorders.  Fed. R. Evid. 702.

Defendant's objections to Exhibit 3 are SUSTAINED.

### C. Plaintiff's Evidentiary Objections

Plaintiff objects to Defendant's Exhibit C, which is Mosby's Medical Drug Reference

regarding gabapentin.  (Ex. C to Neubarth Dec.)  Plaintiff contends that the edition of Mosby's

Medical Drug Reference submitted by Defendant Neubarth is not the edition used while working at

CDCR.  Plaintiff objects that the cited evidence lacks foundation and is not the relevant edition.

Defendant admits that Exhibit C is a copy of pages from another edition of Mosby's Medical

Drug Reference.  (ECF No. 49, Pl's Ex. 10, p. 99.)  There is no indication that the edition relied upon

by Defendant Neubarth was substantially the same as the exhibit supplied.  Accordingly, Plaintiff's

objections to Exhibit C are SUSTAINED.

///

### D.  Summary of Relevant Allegations in Plaintiff's Complaint

Plaintiff arrived at California State Prison, Corcoran ("Corcoran") on August 26, 2009.  During intake, he did not have any documented visual problems, but he had back problems.

On October 14, 2009, Dr. McCabe prescribed Gabapentin for Plaintiff's back pain.  Plaintiff immediately started to experience blurred vision.  On October 30, 2009, he submitted a Medical Request Form complaining of vision problems.

On November 3, 2009, Nurse Barrera provided Plaintiff with eye drops for chronic dry eyes.

On November 19, 2009, Plaintiff submitted another Medical Request form complaining of vision problems.

On November 23, 2009, Nurse Barrera referred Plaintiff for follow up.  His eye acuity was documented at 25/50 right eye and 20/70 left eye.

On November 25, 2009, Plaintiff saw Dr. Dham and expressed concerns that his vision problems could be due to medications.  Plaintiff indicated that if his medication had side effects of blurred vision, then he would like to change medications.  Dr. Dham refused to check the side effects of his medications and assured Plaintiff it was old age.  Dr. Dham referred Plaintiff to optometry.

On December 6, 2009, Plaintiff saw Dr. Bondoc and expressed concerns that his vision problems could be due to his medications.  Plaintiff asked to switch pain pills if blurred vision was a side effect of Gabapentin.  Dr. Bondoc refused to check or switch his medications, suggesting it was old age.  Dr. Neubarth signed off on this as well on January 6, 2010.

On December 14, 2009, Plaintiff's Gabapentin was refilled and the dosage increased by Dr. Neubarth.  At this visit, Plaintiff expressed concerns that his vision problems were caused by his medications.  Plaintiff requested to switch pain pills because the blurred vision started right after taking Gabapentin.  Dr. Neubarth failed to check the medication for known side effects and refused to change the medication.

On January 19, 2009, Plaintiff was seen by optometry and prescribed glasses for blurred vision/myopia.

On February 23, 2010, Plaintiff submitted another medical request complaining that he was losing his vision and it was worsening.

On February 24, 2010, Plaintiff submitted a medical appeal stating that he was losing his vision and that maybe his medications were affecting his vision.  Plaintiff asked to switch pain pills if vision loss was a symptom.

On March 1, 2010, Dr. Neubarth continued Plaintiff's Gabapentin.  Plaintiff expressed his concerns that his medication could be the cause of blurred vision.  Plaintiff requested to switch pain pills.

Plaintiff was not taken off of Gabapentin until April 28, 2010.  The person reviewing Plaintiff's appeal took Plaintiff off of Neurontin because of his bipolar disorder and fear of the medication.  Plaintiff's prescription had expired and was not renewed.  (ECF No. 1, Ex. 16.)

Plaintiff alleges that prison policy at Corcoran has changed and doctors are not supposed to prescribe Gabapentin for back pain.

### E.  Undisputed Material Facts ("UMF")[3]

1.      Plaintiff is a state inmate incarcerated at Corcoran, where the alleged events giving rise to this lawsuit arose.

2.      Dr. Neubarth is a medical doctor licensed in the State of California.  He was employed as a Physician and Surgeon with the California Department of Corrections and Rehabilitation ("CDCR") at Corcoran during the time period relevant to this lawsuit.  (Neubarth Dec. ¶ 1.)

3.      As a Physician and Surgeon at Corcoran, Dr. Neubarth's work responsibilities included, but were not limited to, providing medical care to inmates, reviewing inmate appeals as necessary, and participating in physician review committees to discuss inmate patient cases and future treatment plans.  (Neubarth Dec. ¶ 2.)

4.      Dr. Neubarth has reviewed portions of the Unit Health Record ("UHR") of Plaintiff during the time period relevant to this action, and he is familiar with the medical care Plaintiff received at Corcoran.  (Neubarth Dec. ¶ 3.)

5.      Dr. McCabe prescribed gabapentin to Plaintiff on or about October 14, 2009, for pain relief. (Neubarth Dec. ¶ 4.)

---

[3] The undisputed facts are derived from Defendant's Statement of Undisputed Facts.  (ECF No. 45-2.)  Unless otherwise indicated, only disputed material facts are omitted from this statement.

6.      Dr. Neubarth's review of Plaintiff's UHR shows that he saw Plaintiff on or about December 14, 2009, and March 1, 2010, related to the medication gabapentin.  (Neubarth Dec. ¶ 5.)

7.      The notes for Plaintiff's December 14, 2009 visit contain no documentation that Plaintiff was complaining of blurred vision.  (Neubarth Dec. ¶ 6.)

8.      On January 7, 2010, due to Plaintiff's complaints of pain, Dr. Neubarth prescribed Tylenol. (Neubarth Dec. ¶ 7.)

        Plaintiff denies this statement of fact, arguing that Defendant Neubarth has a history of stamping papers that he had nothing to do with and the supporting exhibit does not contain Defendant Neubarth's handwriting.  Plaintiff has not raised a genuine dispute of material fact.  Plaintiff is not a handwriting expert and his contentions regarding Defendant Neubarth's stamping practices are mere speculation.  The supporting exhibit contains both a signature and a stamp from Defendant Neubarth. (ECF No. 45-3, p. 10, Ex. A to Neubarth Dec.)  Defendant Neubarth also declares under penalty of perjury that he prescribed the Tylenol.

9.      Dr. Neubarth increased the dosage of gabapentin for Plaintiff on or about March 1, 2010.  The notes for this visit did not record any complaint of blurred vision.  (Neubarth Dec. ¶ 8.)

10.     Plaintiff filed an inmate appeal in February, 2010, demanding that he be provided with narcotics instead of gabapentin.  Plaintiff stated in this appeal that he was following the necessary steps to sue CDCR for monetary compensation.  At the first level of appeal, handled by medical care providers other than Dr. Neubarth, it was noted that Plaintiff had a history of bipolar disorder, and that his gabapentin expired in April 2010, and would not be renewed.  (Neubarth Dec. ¶ 9.)

        Plaintiff denies that he was demanding narcotics; however, the interviewer's notes expressly state, "PT wants Narcotics in place of Neurontin . . . ."  (ECF No. 45-3, p. 20, Ex. B to Neubarth Dec.)

11.     As a medical doctor, since Dr. Neubarth first started prescribing gabapentin over 10 years ago, it has been his custom and practice to regularly review the side effects of gabapentin.  (Neubarth Dec. ¶ 11.)

        Although Plaintiff disputes this fact, he has not presented contradictory evidence regarding Defendant Neubarth's custom or practice to raise a genuine dispute.

8

12.     Dr. Neubarth has regularly utilized Mosby's Medical Drug Reference to research gabapentin. (Neubarth Dec. ¶ 11.)

13.     The FDA-approved documents regarding a medication's side effects include conditions that are associated with the use of the medication, and they generally will include almost every potential side effect.  Based on Dr. Neubarth's medical training and experience and review of FDA-approved documentation, myopia is not a side effect of gabapentin.  (Neubarth Dec. ¶ 12.)

Defendant Neubarth does not provide a copy of the FDA-approved documentation.  However, Plaintiff's Exhibit 2 is a copy of the FDA Adverse Event Reporting System for gabapentin.  (ECF No. 49, p. 42, Pl's Ex. 2.)  There is no express reference to myopia in the FDA document, and Plaintiff has not provided any expert testimony indicating that myopia is a side effect of, or caused by, gabapentin. Further, based on Defendant Neubarth's training and experience, "no drug has ever been proven to cause myopia."  (ECF No. 54-1, Neubarth Supp. Dec. at ¶ 5.)

14.     Dr. Neubarth understands that Plaintiff claims in this lawsuit that, his brief use of gabapentin for several months caused him to suffer visions problems, and he was later diagnosed with myopia. There are many causes of blurred vision, and myopia is one of them; however, myopia is a permanent condition.  (Neubarth ¶ 13.)

15.     While gabapentin may cause temporary blurred vision lasting a few hours, gabapentin does not cause myopia or any other long-term vision problems.  (Neubarth Dec. ¶ 14.)

Plaintiff argues that evidence from the FDA identifies a number of side effects from gabapentin, including vision blurred, visual impairment and visual acuity reduced.  While the FDA document does identify these vision issues, it does not identify myopia or provide evidence regarding the permanence of any vision problem.  (ECF No. 49, p. 46, Pl's Ex. 2.)

16.     Based on Dr. Neubarth's medical training and experience, it is common for patients who are in their twenties, similar to Plaintiff, to first report vision problems requiring corrective lens.  Dr. Neubarth's review of Plaintiff's UHR indicates that Plaintiff eventually received glasses to correct very mild myopia.  (Neubarth Dec. ¶ 15.)

17.     Based on Dr. Neubarth's medical training and experience, it is his expert medical opinion that Plaintiff's brief use of gabapentin is not medically likely to cause the type of vision issues claimed by

Plaintiff in this lawsuit, and that gabapentin did not cause myopia or cause Plaintiff to have to eventually receive corrective lens to correct his very mild myopia.  (Neubarth Dec. ¶ 16.)

Although Plaintiff attempts to raise a dispute by asserting that gabapentin caused his loss in visual acuity, he is not a medical expert qualified to testify regarding causation.  Walker, 2006 WL 3371438 at *9; Domingo, 289 F.3d at 607.  Further, there is no evidence presented that myopia is caused by gabapentin.

18.     Dr. Neubarth's determination of whether gabapentin was medically indicated for Plaintiff was made following examinations of Plaintiff, evaluation of objective findings, and review of Plaintiff's UHR, and based on Dr. Neubarth's medical training and expertise.  (Neubarth Dec. ¶ 17.)

Plaintiff attempts to raise a dispute by arguing that gabapentin was not approved by the FDA for back pain and it was against CDCR policy to prescribe gabapentin for off-label use.  Plaintiff has not presented competent, admissible evidence demonstrating that the FDA prohibited the prescription of gabapentin for off-label use or that CDCR policies forbade the practice in total at the time of the events in this action.  In fact, Plaintiff's own evidence and statements demonstrate that the FDA noted off-label use of gabapentin and that CDCR policies permitted off-label use of prescription medications based on documented evidence of need.  (ECF No. 49, pp. 5-6, Pl's Opp'n; p. 43, Pl's Ex. 2.)  Plaintiff cites Smith v. Adam, 2013 WL 1283478, *2-3 (N.D. Cal. Mar. 26, 2013), which discussed evidence that gabapentin was not truly effective for most cases of neuropathy and was currently only approved for adjunctive therapy for seizures and post-herpetic neuralgia.  The evidence was supported by reference to a medical article published in May 2010 discussing medical studies on the off-label use of gabapentin, which concluded that off-label uses for neuropathic pain and migraine symptoms provided questionable benefit and could increase the potential for harmful side effects.  Id. at 3.  The evidence also indicated that CDCR's practice was to not prescribe medication for off-label use unless there was documented evidence based on need.  Id. at 3.  Plaintiff has not raised a genuine dispute of material fact that CDCR precluded the off-label use of gabapentin in late 2009 and early 2010 or that Defendant Neubarth was aware of any medical research in December 2009 and March 2010 that failed to support its off-label use for pain.

Plaintiff also asserts that the manufacturer of gabapentin was sued and fined for illegally promoting gabapentin for off-label use of pain treatment without scientific evidence.  To support this assertion, Plaintiff cites the declaration of a CDCR Chief Medical Officer, which was relied on in Ramirez v. Swingle, 2012 WL 5828549, *8 (E.D. Cal.  Nov. 15, 2012) (findings and recommendations regarding motion for summary judgment in section 1983 action alleging deliberate indifference).  The referenced declaration, rendered by the defendant in that action, refers to the manufacturer's fine for promoting off-label use, but does not provide direct evidence of the fine or suit and suggests that these events may have occurred after Plaintiff stopped using gabapentin.  Id. at 8, 19.  More importantly, Plaintiff has not established that Defendant Neubarth knew that off-label use of gabapentin was not medically indicated for Plaintiff's condition at the time he prescribed it in December 2009 and March 2010.

19.    Based on Dr. Neubarth's medical training and expertise, it is his expert medical opinion that Plaintiff received appropriate medical care within the standard of care.  (Neubarth Dec. ¶ 19.)

### F.  Plaintiff's Separate Statement of Undisputed Facts ("PUF")[4]

1.    There were no visual problems noted on Plaintiff's medical history at Duel Vocational Institution on November 25, 2008, or on his Corcoran intake evaluation on August 26, 2009.  (ECF No. 49, Pl's Ex. 7.)

2.    Plaintiff was seen by Dr. McCabe and was prescribed gabapentin for back pain.  (ECF No. 49, Pl's Ex. 7.)

3.    On October 30, 2009, Plaintiff submitted a medical request form stating, "I get blurry vision alot these days."  (ECF No. 49, Pl's Ex. 12, p. 101.)

4.    On November 3, 2009, Plaintiff was seen for chronic dry eyes.  (ECF No. 49, Pl's Ex. 13, p. 102.)

5.    On November 19, 2009, Plaintiff submitted another medical request form stating, "I'm losing my far sight of vision everything is blurry I use to have perfect."  (ECF No. 49, Pl's Ex. 13a, p. 103.)

---

[4]  Plaintiff's separate statement of undisputed material facts is derived from his opposition papers and supporting exhibits. (ECF No. 49, pp. 8-10 and Exhibits 1-27.)  Unless otherwise indicated, disputed or unsupported facts are omitted.

6.      On November 23, 2009, Plaintiff was seen by a nurse concerning vision issues.  Plaintiff's visual acuity level was documented at 20/50 in his right eye and 20/70 in his left eye.  Plaintiff was referred for follow up.  (ECF No. 49, Pl's Ex. 25, p. 117.)

7.      On November 23, 2009, Plaintiff was seen by Dr. Dham for his vision.  (ECF No. 49, Pl's Ex. 26.)

8.      On December 4, 2009, Plaintiff was seen by Nurse Ceballos.  Nurse Ceballos noted on the form "Also c/o vision problems."  (ECF No. 49, Pl's Ex. 14, p. 104.)

9.      On December 6, 2009, Plaintiff was seen by Dr. Bondoc for vision problems.  (ECF No. 49, Pl's Ex. 7.)

10.     On December 14, 2009, Plaintiff was seen by Dr. Neubarth, who re-prescribed gabapentin twice a day and discontinued his eye drops.  (ECF No. 49, Pl's Ex. 11, p. 100.)  Plaintiff's file was accessible to Dr. Neubarth. (ECF No. 49, Pl's Ex. 4, p. 52.)

11.     On January 6, 2010, Defendant signed Dr. Bondoc's December 8, 2009 request for optometry, which was denied.  (ECF No. 49, Pl's Ex. 16, p. 106.)

12.     On January 19, 2010, Plaintiff was prescribed glasses.  (ECF No. 49, Pl's Ex. 17, p. 107.)

13.     Dr. Neubarth admits that myopia is a form of blurred vision.  (ECF No. 49, Pl's Ex. 4, p. 53.)

14.     On January 20, 2010, Dr. Neubarth signed off on Plaintiff's optometry services.  (ECF No. 49, Pl's Ex. 17, p. 107.)

15.     On February 23, 2010, Plaintiff put in another medical request saying, "I'm progressively loosing [sic] my vision, it[']s getting worse and worse . . . I need to be bumped up on the doctor line cause it[']s serious."  (ECF No. 49, Pl's Ex. 15, p. 105.)

16.     On February 24, 2010, Plaintiff put in a medical appeal saying, "I'm progressively loosing [sic] my vision . . . maybe my medications are affecting my vision."  Plaintiff requested to switch pain pills if vision loss is a symptom of Neurontin and to find out why he was "going blind."  Plaintiff stated, "I'm not over exaggerating I'm loosing [sic] my vision, And I swear I will sue every one if it can be prevented and you (prison) are ignoring it."  (ECF No. 49, Pl's Ex. 18, p. 108.)

17.     On March 1, 2010, Plaintiff saw Dr. Neubarth, who noted an appeal.  (ECF No. 49, Pl's Ex. 19, p. 109.)

12

### G.  Discussion

1.  <u>Eighth Amendment - Deliberate Indifference to Serious Medical Needs</u>

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference is a high legal standard," <u>Simmons v. Navajo County Ariz.</u>, 609 F.3d 1011, 1019 (9th Cir. 2010); <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, <u>Jett</u>, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980), citing <u>Estelle</u>, 429 U.S. at 105 06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106; <u>see also</u> <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  <u>See</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

1    Defendant Neubarth presents undisputed evidence that Dr. McCabe prescribed gabapentin for

2    Plaintiff in October 2009.  (UMF 5.)  Thereafter, Defendant Neubarth continued Plaintiff's gabapentin

3    in December 2009, and increased the dosage in March 2010.  During these visits, there are no noted

4    complaints by Plaintiff of any of blurred vision.  (UMF 5, 6, 9.)

5    Defendant Neubarth also presents undisputed expert testimony that Plaintiff's diagnosed

6    myopia was not caused by gabapentin, the side effects of gabapentin do not include myopia and

7    Plaintiff's brief use of gabapentin was not medically likely to have caused Plaintiff's myopia.  (UMF

8    13, 15, 17.)  Based on the undisputed facts, Defendant Neubarth has established that his actions in

9    prescribing gabapentin did not result in harm to Plaintiff.  Jett, 439 F.3d at 1096.  Defendant Neubarth

10   has met his initial responsibility to demonstrate that he is entitled to summary judgment on Plaintiff's

11   Eighth Amendment claim.  The burden therefore shifts to Plaintiff to establish that a genuine issue as

12   to any material fact actually does exist. Matsushita Elec. Indus. Co., 475 U.S. at 586.

13   In his opposition, Plaintiff first challenges Defendant Neubarth's credibility.  However, in

14   ruling on a motion for summary judgment, the court does not make credibility determinations.

15   Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

16   Second, Plaintiff argues that Defendant Neubarth violated CDCR policy in prescribing

17   gabapentin for an off-label use.  Despite this argument, Plaintiff has not presented competent,

18   admissible evidence demonstrating that CDCR policies at the time precluded physicians from

19   prescribing medications for off-label use.  Plaintiff's own evidence demonstrates that CDCR policies

20   permitted prescription of medications for off-label use based on expert medical judgment.  (ECF No.

21   49, Pl's Opp'n, pp. 5-6.)  Plaintiff has not raised a genuine dispute that Defendant Neubarth violated

22   CDCR policy by prescribing gabapentin for an off-label use.

23   Plaintiff also attempts to raise a dispute by arguing that gabapentin was not approved by the

24   FDA for back pain and the manufacturer of gabapentin was sued and fined for illegally promoting

25   gabapentin for off-label use of pain treatment without scientific evidence.  However, Plaintiff does not

26   provide direct evidence of such suit or fine, he does not indicate that these purported events occurred

27   while he was prescribed and taking gabapentin in 2009 and 2010, and he does not establish that

28

1    Defendant Neubarth knew of such events while prescribing gabapentin for Plaintiff in 2009 and 2010.

2    (ECF No. 49, Pl's Opp'n, pp. 5-6.)

3           Third, Plaintiff argues that Defendant Neubarth knew of Plaintiff's loss of visual acuity.

4    Plaintiff has presented evidence that Defendant Neubarth signed off on various requests for optometry

5    services for Plaintiff.  (PUF 11, 14.)  Plaintiff also has presented his own sworn statement that he told

6    Defendant Neubarth about his suspicions that gabapentin was causing blurred vision.  (ECF No. 49, p.

7    21.)  Defendant Neubarth's knowledge of Plaintiff's vision issues, however, does not raise a genuine

8    dispute of material fact because, as discussed below, there is no evidence that gabapentin caused

9    Plaintiff's myopia.  Even if Defendant Neubarth disregarded Plaintiff's complaints of blurred vision,

10   such indifference amounts, at most, to negligence, which does not support an Eighth Amendment

11   claim.  Broughton, 622 F.2d at 460 (negligence); Wood, 900 F.2d at 1334 (gross negligence).

12          Finally, Plaintiff argues that gabapentin caused him permanent loss in visual acuity.  Plaintiff

13   believes that the correlation between him experiencing a sudden onset of blurred vision immediately

14   after taking gabapentin, the blurred vision worsening after Defendant Neubarth increased the dose of

15   gabapentin, and the progressive loss of vision stopping after Plaintiff stopped taking gabapentin proves

16   that gabapentin was the cause of the permanent loss of visual acuity that Plaintiff suffered.  (ECF No.

17   49, pp. 11-12.)  Despite this belief, Plaintiff has not presented any competent testimony from a

18   medical expert to demonstrate that gabapentin caused his diagnosed myopia and need for glasses.

19   Walker, 2006 WL 3371438 at *9; Domingo, 289 F.3d at 607.  In contrast, Defendant Neubarth has

20   presented undisputed expert testimony that Plaintiff's diagnosed myopia was not caused by

21   gabapentin, Plaintiff's brief use of gabapentin was not medically likely to have caused Plaintiff's

22   myopia and no drug has ever been proven to cause myopia.  (UMF 15, 17; ECF No. 54-1, Neubarth

23   Supp. Dec. ¶ 5.)  Absent testimony from a medical expert, Plaintiff has failed to raise a genuine issue

24   of material fact that he sustained any harm as a result of the use of gabapentin.  Jett, 439 F.3d at 1096

25          To the extent Plaintiff believes he should have been prescribed some other approved pain

26   medication instead of gabapentin, this does not amount to a constitutional violation.  At best, this is a

27   mere disagreement between Plaintiff and Defendant Neubarth regarding the prescribed course of

28

treatment for Plaintiff, which does not support a claim of deliberate indifference. <u>Sanchez</u>, 891 F.2d at 242.

The Court therefore finds that summary judgment should be entered in favor of Defendant Neubarth.

2. <u>Qualified Immunity</u>

Based on the Court's finding that Defendant Neubarth is entitled to summary judgment on Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs, it is unnecessary to address the issue of qualified immunity.

**III.       Conclusion and Recommendation**

For the reasons discussed above, it is HEREBY RECOMMENDED that:

1.   Defendant's motion for summary judgment, filed on August 21, 2014, be GRANTED; and

2.   Judgment be entered in favor of Defendant Neubarth.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 7, 2015**                    _/s/ Barbara A. McAuliffe_

UNITED STATES MAGISTRATE JUDGE

16